J-A16030-25

2025 PA Super 208

| | | |
|---|---|---|
| RICHARD E. PICKERING, AS ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF JUSTINE M. GROSS | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| ASSOCIATED REALTY PROPERTY MANAGEMENT, INC.; RICHARD JOHN SANTORUM; BEAVER TERRACE CONDOMINIUM ASSOCIATION; WESTERN CHUTES, COMPACTERS & RECYCLING SYSTEMS, INC.; THE CHUTE DOCTOR, BUCHANAN COMPANY, INC.; BUCHANAN SPECIALTIES, INC.; CHUTE SOURCE, LLC, F/K/A REFUSE SOLUTIONS; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 5; AND JOHN DOE 6 | : : : : : : : : : : : : : : : | No. 2446 EDA 2024 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  231000613

| | | |
|---|---|---|
| RICHARD E. PICKERING, AS ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF JUSTINE M. GROSS | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| ASSOCIATED REALTY PROPERTY MANAGEMENT, INC.; RICHARD JOHN SANTORUM; BEAVER TERRACE CONDOMINIUM ASSOCIATION; | : : : : | |

WESTERN CHUTES, COMPACTERS   :
RECYCLING SYSTEMS, INC.; THE   :
CHUTE DOCTOR; BUCHANAN   :
COMPANY, INC.; BUCHANAN   :
SPECIALTIES, INC.; CHUTE SOURCE,   :
LLC, F/K/A REFUSE SOLUTIONS;   :
JOHN DOE 1; JOHN DOE 2; JOHN   :
DOE 3; JOHN DOE 5; AND JOHN DOE   :
6   :   No. 1929 EDA 2025

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  231000613

RICHARD E. PICKERING, AS   :   IN THE SUPERIOR COURT OF
ADMINISTRATOR *AD*   :   PENNSYLVANIA
*PROSEQUENDUM* OF THE ESTATE OF   :
JUSTINE M. GROSS   :
  :
Appellant   :
  :
v.   :
  :
ASSOCIATED REALTY PROPERTY   :
MANAGEMENT, INC.; RICHARD JOHN   :
SANTORUM; BEAVER TERRACE   :
CONDOMINIUM ASSOCIATION;   :
WESTERN CHUTES, COMPACTERS &   :
RECYCLING SYSTEMS, INC.; THE   :
CHUTE DOCTOR; BUCHANAN   :
COMPANY, INC.; BUCHANAN   :
SPECIALTIES, INC.; CHUTE SOURCE,   :
LLC, F/K/A REFUSE SOLUTIONS;   :
JOHN DOE 1; JOHN DOE 2; JOHN   :
DOE 3; JOHN DOE 5; AND JOHN DOE   :
6   :   No. 1930 EDA 2025

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  231000613

| | | |
|---|---|---|
| RICHARD E. PICKERING, AS ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF JUSTINE M. GROSS | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : : | |
| | : | |
| v. | : : | |
| | : | |
| ASSOCIATED REALTY PROPERTY MANAGEMENT, INC.; RICHARD JOHN SANTORUM; BEAVER TERRACE CONDOMINIUM ASSOCIATION; WESTERN CHUTES, COMPACTERS & RECYCLING SYSTEMS, INC.; THE CHUTE DOCTOR; BUCHANAN COMPANY, INC.; BUCHANAN SPECIALTIES, INC.; CHUTE SOURCE, LLC, F/K/A REFUSE SOLUTIONS; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 5; AND JOHN DOE 6 | : : : : : : : : : : : : : : | No. 1931 EDA 2025 |

Appeal from the Order Entered August 14, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  231000613

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

OPINION BY KUNSELMAN, J.: **FILED SEPTEMBER 18, 2025**

## I. Introduction

In this wrongful-death/product-defect matter, the Plaintiff, Richard E. Pickering, as the Administrator *ad Prosequendum* of the Estate of Justine M. Gross, appeals from the orders sustaining preliminary objections as to venue and transferring this case to Centre County, the location of Ms. Gross' death. Whether defendants regularly conduct business in a county presents a mixed

- 3 -

question of fact and law, with questions of fact predominating. Therefore, the Pennsylvania trial courts have wide discretion in determining if venue is proper based on a defendant's business activities. Because Mr. Pickering fails to persuade us that the trial court committed an abuse of discretion by sustaining these defendants' preliminary objections, we affirm.

## II. Factual & Procedural Posture

Richard John Santorum lived in Virginia but owned a condominium unit in Centre County, Pennsylvania. As a unit owner, he was a member of the Beaver Terrace Condominium Association. The Association and Associated Realty Property Management, Inc. (collectively, "the Condominium") jointly owned and maintained the common areas of the eleven-story building. *See* Third Amended Complaint at 5.[1]

Associated Realty also oversaw the leasing and upkeep of units for out-of-town owners, such as Mr. Santorum. Neither the Condominium nor Mr. Santorum had any contact with Philadelphia County.

The common area of the condominium building included a garbage chute with access hatches on each floor. Buchanan Company, Inc. (using the fictitious name of "Western Chutes, Compacters & Recycling Systems, Inc."[2])

_____

[1] Because this appeal arises from preliminary objections during the pleadings stage, we accept the facts alleged in the operative complaint as true. *See, e.g.*, *Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012).

[2] Western Chutes, Compacters & Recycling Systems, Inc.; The Chute Doctor; and Buchanan Specialties, Inc. were unincorporated entities and functioned
*(Footnote Continued Next Page)*

and Chute Source, LLC "designed, manufactured, tested, distributed, sold, [and] supplied" the access hatches. *Id.* at 13-14. While Buchanan Company and Chute Source had no physical presence, employees, or agents in Philadelphia County, they both conducted business there.

Headquartered in Huntington Beach, California, Buchanan Company sold garbage chutes and parts directly to consumers across the country. *See* James Buchanan's Depo., 2/6/24, at 14-15. The corporation produced no goods. *Id.* at 16. Instead, it purchased goods from two manufacturers and offered the goods for resale on its website "to anybody that order[ed] them." *Id.* at 23. Using one of its fictious brand names, Buchanan Company would then ship the goods to whatever address the customers requested.

Between 2013 and 2023, it received and fulfilled 98 purchase orders for Pennsylvania customers, eight of whom were in Philadelphia County. *See id.* at 31-32; *see also* Buchanan Company's Preliminary Objections Ex. B at 7-8, 11-12, 27-28.[3] In 2015, Buchanan Company made two sales in Philadelphia totaling $62.91, one Philadelphia sale in 2016 for $56.70, no Philadelphia sales in 2017 and 2018, three Philadelphia sales in 2019 totaling $484.76, none in 2020, one in 2021 for $207.69, one in 2022 for $54.18, and none in 2023.

_____

"strictly D/B/As of Buchanan Company, Inc." *See* James Buchanan's Depo., 2/6/24, at 8.

[3] Exhibit B to Western Chutes Preliminary Objections is an unpaginated, non-sequential spreadsheet of its Pennsylvania sales from 2013 through 2023.

*See* Buchanan Company's Preliminary Objections Ex. B at 19, 27. All of those sales were online orders.

Buchanan Company's total "sales to Philadelphia over this entire period equaled $866.24 . . . ." Trial Court Opinion, 11/22/24, at 5. By comparison, its national sales exceeded $7,000,000 from 2020 through 2022. *See* James Buchanan's Affidavit, 1/6/24, at 5. And in 2023, Buchanan Company made $10,432,234.94 in sales. ***See id.***

As for Chute Source, the Akron-based company made "chutes for high-rise buildings, linen chutes, trash chutes, recycle chutes, compactors, [and] containers." Mark Milie's Depo., 7/16/24, at 10. It had no sales department. Instead, Chute Source "reps" throughout the country were "basically selling [its] brand" on the company's behalf. *Id.* at 14. It had eleven representatives (including Buchanan Company) buying and reselling Chute Source products in every region of the country. ***See id.*** at 15. In addition, Chute Source would sell its products directly to "small, one-time buyers, like Akron Public Schools . . . ." *Id.* This occurred if smaller customers contacted Chute Source by phone or submitted a purchase order on its website.

From 2014 through 2024, Chute Source grossed $45,346,485 from all of its sales. *See* Chute Source's Answers and Objections to Plaintiff's Venue Interrogatories at 5. During that same time, Chute Source had one customer in Philadelphia County – Royal Pak Systems, which "made purchases during the 2022 calendar year only." *Id.* Royal Pak's purchases came to $67,921 in

gross sales, over the course of submitting eleven purchase orders. ***See id.***; ***see also*** Mark Milie's Depo., 7/16/24, at 27.

Unbeknownst to Chute Source, Royal Pak falsely claimed on its website that it was "the exclusive distributor of . . . Chute Source, LLC . . . ." Mark Milie's Depo., 7/16/24, at 24-25. Chute Source never "had any conversation with Royal Pak about being an exclusive distributor of its products," much less authorized it to perform such advertising. ***Id.*** at 25. In fact, none of Chute Source's representatives were "exclusive distributors of its products," because its eleven distributors were "all independent companies." ***Id.*** at 26.

In 2017, Chute Source manufactured access hatches and shipped them to Buchanan Company's warehouse in California. Buchanan Company resold and shipped them to the Condominium. Once the goods arrived in State College, an unknown person (or persons) installed the access hatches onto the garbage chute.

Four years later, in August of 2021, Mr. Santorum leased his unit to Ms. Gross. On November 10, 2021, she fell through the eleventh-floor access hatch, down the garbage chute, to her death. ***See*** Third Amended Complaint at 16-17. An estate was raised in New Jersey. The Surrogates' Court of Union County issued letters of administration to Mr. Pickering, as Administrator *ad Prosequendum* of the Estate of Justine M. Gross.

On October 5, 2023, Mr. Pickering commenced this action in the Court of Common Pleas of Philadelphia County by filing a so-called Second Amended

Complaint[4] against the Condominium, Mr. Santorum, Buchanan Company (as well as its three pseudonyms), and various John Does. He brought causes of action for negligence, premise liability, product liability, breach of warranty, survival, and wrongful death.

The defendants filed various preliminary objections, including objections to venue in Philadelphia County. The trial court issued a rule to show cause as to why the preliminary objections should not be sustained, and the parties engaged in months of venue discovery.

Mr. Pickering filed an amended complaint ("Third Amended Complaint") and replaced a John Doe with Chute Source. All of the defendants refiled preliminary objections to venue. Mr. Pickering responded that Philadelphia was a proper venue for all defendants, because (1) he had alleged joint and several liability and (2) Buchanan Company and Chute Source regularly do business in Philadelphia County. The trial court disagreed, sustained the preliminary objections to venue, and issued four orders transferring the case to Centre County. This timely appeal followed.[5]

### III. Analysis

Mr. Pickering raises three appellate issues as follows:

---

[4] Mr. Pickering titled the first complaint filed at docket number 231000613 as the Second Amended Complaint. He had filed two, previous complaints at a now-discontinued docket number. Apparently, Mr. Pickering kept counting where he had left off in the previous lawsuit.

[5] We note that Mr. Pickering moved for reconsideration, but he filed his notices of appeal before the trial court decided that motion. The trial court thereafter entered an order expressly denying reconsideration.

1.      Did the trial court err as a matter of law or otherwise abuse its discretion in failing to conclude that [Buchanan Company] regularly conducts business in Philadelphia and, therefore, venue is proper in Philadelphia as to all defendants [under Pennsylvania Rules of Civil Procedure] 2179(a)(2) and 1006(c)(1)?

2.      Did the trial court err as a matter of law or otherwise abuse its discretion in failing to conclude that Chute Source regularly conducts business in Philadelphia County and, therefore, venue is proper in Philadelphia County as to all Defendants [under Pennsylvania Rules of Civil Procedure] 2179(a)(2) and 1006(c)(1)?

3.      Did the trial court err as a matter of law and/or otherwise abuse its discretion in failing to afford [Mr. Pickering] the opportunity to present the totality of his evidence gathered in venue disclosure and issue its orders on an incomplete venue factual record?

Pickering Brief at 7-8.  We dispose of each issue in turn.

*A.     Buchanan Company's Business in Philadelphia*

In his first issue, Mr. Pickering contends, "because [Buchanan Company] 'regularly conducts business' in Philadelphia County, the trial court erred as a matter of law and abused its discretion in holding that venue is improper in Philadelphia County." *Id.* at 26.  In his view, the trial court committed an analytical error by examining Buchanan Company's "Philadelphia revenue as a percentage of [its] total national sales as the basis for transferring venue." *Id.* at 27.  He makes the novel claim that "[i]f sales and revenue are going to be examined, they must be compared with the business conducted in the state," rather than all of Buchanan Company's sales across the country. *Id.* at 28.  However, Mr. Pickering cites no precedent where a court has performed

so shortsighted a review of the sales evidence for the purpose of determining venue.

By only examining the 98 Pennsylvania sales that Buchanan Company made between 2013 and 2023, Mr. Pickering artificially inflates the percentage of Buchanan Company sales in Philadelphia to as much as 2.5% of sales, even though they were an infinitesimally small fraction of a percentage of all its total sales nationwide. *See id.* Also, Mr. Pickering thereby emphasizes that Buchanan Company made "two-thirds of its Pennsylvania revenue from [Philadelphia] County," even though it only made $866.24 in that county over the course of a decade. *Id.* at 29.

Then, Mr. Pickering asserts that, reviewing all of Buchanan Company's sales "leads to two impermissible results." *Id.* at 29. "First, it creates disparate treatment of differently positioned defendants," because all of the evidence of record "create[s] a class of defendants that — even though they repeatedly sold goods in the state — could argue they do not regularly conduct business anywhere in it." *Id.* "Second, such an analysis would eliminate the provision of Pa.R.Civ.P. 2179(a)(2) and permit [Mr. Pickering] only one viable venue." *Id.* As we explain, both results are permissible, and they comport with the intent of the drafters of our rules of procedure.

"Pennsylvania Rule of Civil Procedure 1006(d)(1) gives trial courts considerable discretion to determine whether to grant a change of venue, and such a determination will not be disturbed on appeal absent an abuse of discretion." *Hangey v. Husqvarna Professional Products, Inc.*, 304 A.3d

1120, 1141 (Pa. 2023). "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied; or the judgment exercised is manifestly unreasonable; or the result of partiality, prejudice, bias or ill will, as shown by the evidence of the record." *Id.* (quoting ***Zappala v. Brandolini Property Management, Inc.***, 909 A.2d 1272, 1284 (Pa. 2006). "An appellate court cannot find an abuse of discretion simply because it might have reached a different conclusion; if there exists any proper basis for the trial court's decision to transfer venue, the decision must stand." *Id.* (some punctuation omitted).

Here, Mr. Pickering claims that the trial court misapplied the test to determine whether, under Pennsylvania Rule of Civil Procedure 2179(a)(2), Buchanan Company "regularly conducts business" in Philadelphia County, as the appellate courts of this Commonwealth have interpreted and applied that phrase in our precedents. Thus, he contends that the trial court overrode or misapplied controlling law. As with all questions of law, "our standard of review is *de novo*, and our scope is ***plenary***." ***Hangey***, 304 A.3d at 1141 (emphasis added).

The word "plenary" derives from the Latin "*plena*," meaning "full" or "complete." So, when performing a plenary review, every piece of competent evidence that the trial court found credible is within this Court's (and the trial court's) scope of review. Therefore, Mr. Pickering's attempt to narrow our scope of review for determining whether a corporation, engaged in interstate

commerce, regularly conducts business in any one county to only the evidence of its Pennsylvania sales is an error of law.

Clearly, the trial court found Buchanan Company's evidence that it did over $7,000,000 in national sales from 2020 to 2022 and over $10,432,234.94 in sales in 2023 to be credible and relevant.[6] **See** James Buchanan's Affidavit, 1/6/24, at 5. Hence, we are obligated to consider this credible evidence, because our scope of review is plenary. In fact, the **Hangey** Court expressly **permitted** trial courts to review and consider the national sales of business entities that are engaged in interstate commerce as part of a venue analysis.

In **Hangey**, the plaintiff was riding on his lawnmower in Wayne County, and he fell. The mower ran over his legs and injured him. Mr. Hangey filed a product-defect suit in Philadelphia County, and the defendants preliminarily objected to venue.

Discovery revealed that, in 2016, the manufacturer of the mower had approximately $1.4 billion in sales revenue across the United States, of which $75,310.00 came from direct sales in Philadelphia County. Of the $75,000 in sales made in Philadelphia in 2016, $69,700 came from an authorized dealer, DL Electronics, Inc. Approximately 0.005% of the 2016 national revenue resulted from direct sales in Philadelphia County. Sales data from 2014 and 2015 were similar, with approximately 0.005% of annual sale revenue resulting from direct sales within Philadelphia County.

_____

[6] Mr. Pickering made no objection in the trial court regarding the relevancy of Mr. Buchanan's affidavit.

The trial court sustained the preliminary objections and transferred the case to Bucks County. The plaintiffs appealed, and we reversed. The Supreme Court granted allowance of appeal and agreed with this Court that the trial court abused its discretion.

The High Court explained that there is a two-pronged test for deciding whether a corporate defendant "regularly conducts business" in a county. Pa.R.C.P. 2179(a)(2). This is known as "the quality-quantity test." *Hangey*, 304 A.3d at 1131. The quality prong "means those [acts] directly furthering, or essential to, corporate objects; they do not include incidental acts." *Id.* at 1130–31. The quantity prong means "those [acts] which are so continuous and sufficient to be termed general or habitual." *Id.* at 1131.

Regarding the quantity prong, the trial court erred, as a matter of law, because it based its decision to transfer solely on the *de minimis* percentage of business that the manufacturer conducted in Philadelphia County in comparison to its national sales. The *Hangey* Court recognized that 0.005% of the manufacturer's annual, nationwide revenue came from direct sales in Philadelphia County. However, the trial court failed to consider all of the evidence of record, including evidence that, by contracting with DL Electronics to serve as an authorized dealer, the manufacturer was "at least trying to make sales in Philadelphia, regularly and continuously" even if its "products [were] collecting dust on the store shelves and [the manufacturer was] making relatively little money out of Philadelphia County . . . ." *Id.* at 1149.

Even so, "this is not to say the trial courts are prohibited from considering the percentage of national revenue," when they "find[] the percentage relevant in [a] particular case . . . ." *Hangey*, 304 A.3d at 1146. Thus, *Hangey* did not hold that, when courts review "sales and revenue . . . they must be compared with the business conducted in the state," rather than a business's national sales. Pickering's Brief at 28. We reject Mr. Pickering's novel contention that only Pennsylvania sales should be reviewed as inconsistent with our scope of review for questions of law and with the discretion afforded to trial courts in *Hangey*. Thus, the trial court did not misapply precedents by considering all of Buchanan Company's national sales and comparing them to the eight sales it made in Philadelphia County.

Moreover, we are unconvinced that an impermissible result will follow from the trial court's analysis of those national sales. In Mr. Pickering's mind, considering national sales, as opposed to only Pennsylvania sales, may produce disparate treatment between Buchanan Company and some future defendants. He is concerned that, someday, there may be defendants who, "even though they repeatedly sold goods in the state — could argue they do not regularly conduct business anywhere in it." Pickering's Brief at 29. He cites no legal authority concerning "disparate treatment" under the Rules of Civil Procedure, nor does Mr. Pickering explain why he has standing to advance the rights of future defendants.

We also fail to understand how, by not regularly conducting business in any particular county, a hypothetical defendant would find itself disparately

treated. The availability of more venues is a boon to the plaintiff, not the defendant, because it is the plaintiff who may select among all possible proper venues when filing a lawsuit. Defendants would seemingly want the available options of where they could be sued to be as limited as legally possible.

Even so, the answer to Mr. Pickering's conundrum is simple: the Rules of Civil Procedure permit such a result. Nothing in their language guarantees that a plaintiff will have multiple, proper venues in the Commonwealth from which to choose. Indeed, if the transaction or tort occurred in another state or nation, it is conceivable that *no* venue in the Commonwealth would be proper. In such an instance, if the defendant filed preliminary objections as to venue, the case would need to be dismissed to another jurisdiction.

For example, regarding corporate defendants, a lawsuit "against a corporation or similar entity may be brought in and only in a county where

(1) the registered office or principal place of business of the corporation or similar entity is located;

(2) the corporation or similar entity regularly conducts business;

(3) the cause of action arose;

(4) a transaction or occurrence took place out of which the cause of action arose; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a)(2). If a plaintiff sued an out-of-Commonwealth corporate defendant and if none of the five bases of venue were established, venue would not be proper in any Pennsylvania county.

Thus, Mr. Pickering's concern that the trial court's analysis might disparately treat corporate defendants, some of whom might regularly do business in a Pennsylvania county and others who might not, is simply a result of how venue rules operate. It is also a byproduct of the arbitrary way in which the General Assembly decided to draw the county lines. In addition, the population size of a given county will also likely play a role in the amount and regularity of business that a corporate defendant does there. Thus, the fact that some defendants do more business on one side of a given county line than other defendants is essentially the invisible hand of the free market at work.

As a result of this randomness, for some corporate defendants, venue may be proper in multiple counties, while, for other corporate defendants, it may be proper in only one. Still, there are other corporate defendants as to whom venue may not be proper in *any* Pennsylvania county. Hence, the trial court did not violate the plain language or the intent of Rule 2179(a)(2) by analyzing Buchanan Company's national sales, instead of its Pennsylvania sales.

Nothing in Rule 2179(a)(2) guarantees plaintiffs that a defendant must regularly conduct business in at least one Pennsylvania county. The Rule only

permits a plaintiff to sue a defendant in any county where the defendant regularly conducts business – no more and no less.

Here, Mr. Pickering does not claim Buchanan Company had any other continuing, regular, or habitual business activities in Philadelphia County that the trial court overlooked. Thus, unlike in *Hangey*, the trial court did not take an impermissibly shortsighted look at the evidence of record by examining only Buchanan Company's national sales in comparison to its eight sales in Philadelphia. In this case, the trial court only reviewed that evidence, because it was the "totality of the evidence" regarding Buchanan Company's business in that county. *Hangey*, 304 A.3d at 1129. Once it made those eight sales and shipped its goods to Philadelphia, Buchanan Company did no further business there.

The trial court therefore rationally relied upon those eight sales and logically compared them to the corporation's national revenues. Any other point of comparison would have irrationally distorted the percentage of sales that Buchanan Company made in Philadelphia County and painted a false picture of how rarely it conducted business there. Indeed, in several years over a decade, it made no sales in Philadelphia at all, and, at most, it made but three sales in a single year. Whereas the manufacturer in *Hangey* had a constant presence in Philadelphia and was always attempting to sell its goods through its local dealer, Buchanan Company conducted next to no business in that county.

Accordingly, Mr. Pickering's argument does not convince us that the trial court abused its discretion when it decided that Buchanan Company does not regularly conduct business in Philadelphia County. His first issue affords him no appellate relief.

B.    *Chute Source's Business in Philadelphia*

In his second issue, Mr. Pickering claims that, "because Chute Source 'regularly conducts business' in Philadelphia County, the trial court erred as a matter of law and abused its discretion in holding that venue is improper in Philadelphia County." Pickering's Brief at 30. He reiterates his complaint from the prior issue that the trial court considered all of Chute Source's national sales, rather than just its Pennsylvania sales. ***See id.*** at 33. By erroneously comparing Chute Source's Philadelphia sales to only its sales in Pennsylvania in 2022 Mr. Pickering drastically overinflates the percentage of Philadelphia sales to 60%. ***See id.*** For all of the reasons we have detailed above, this argument does not establish an abuse of discretion by the trial court.

The remainder of the argument is mostly Mr. Pickering's attempt to recast the facts he learned during venue discovery to persuade us that Chute Source has "a cozy relationship with Royal Pak . . . ." ***Id.*** at 31. He bases his revisionist view of the facts on Royal Pak's false claim that it is "the exclusive distributor of . . . Chute Source, LLC . . . ." Mark Milie's Depo., 7/16/24, at 24-25. However, Mr. Milie, the General Manager of Chute Source, had no idea Royal Pak was making such a claim on its website, and, in any event, Royal Pak's website was irrelevant. The only acts relevant under the quality-

quantity test for whether a defendant is conducting business in the county are the acts of the defendant itself, not the acts of third-parties. **See Hangey**, **supra**.

Thus, the statements on Royal Pak's website do not establish that Royal Pak has a distributor relationship, much less an exclusive one. In fact, Mr. Milie testified that Chute Source never "had any conversation with Royal Pak about being an exclusive distributor of its products," much less authorized it to perform such advertising. Mark Milie's Depo., 7/16/24, at 25. None of Chute Source's representatives "would be considered exclusive distributors of its products," because its eleven distributors, located in various regions across the United States, are "all independent companies." **Id.** at 26. Hence, Mr. Pickering's reliance upon the non-existent, distributor relationship between Chute Source and Royal Pak is misplaced.

Finally, Mr. Pickering argues that the eleven, separate orders that Chute Source fulfilled for Royal Pak in 2022 are "more than sufficient to sustain venue." As to this point, Mr. Pickering makes no claim that the trial court misapplied or overrode any precedent. In fact, Mr. Pickering cites no legal precedent or other authority in this subsection of his brief. **See** Pickering Brief at 30-33.

Nor does he contend – much less persuade us – that the trial court's rejection of his view of the eleven shipments to Royal Pak was "manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of the record." **Zappala**, 909 A.2d at 1284. In other words, he

neglects our deferential standard of review for a trial court's decision to transfer venue and essentially asks us to substitute our view of the 2022 sales for that of the trial court. This we may not do.

"An appellate court cannot find an abuse of discretion simply because it might have reached a different conclusion . . . ." *Hangey*, 304 A.3d at 1141. "An abuse of discretion is not merely an error of judgment . . . ." *Id.*

Here, Mr. Pickering, at best, contends that the trial court made an error in judgment by not agreeing with him that the eleven sales to Royal Pak satisfy the quantity-prong of the regularly-conducting-business test. His *de novo* argument fails to convince us that the trial court abused its discretion by sustaining Chute Source's preliminary objection to venue. Mr. Pickering's second issue is dismissed as meritless.

C.     *Request for Remand for Further Discovery*

As his third and final issue, Mr. Pickering suggests that "this case should be remanded, and [he] should be afforded the opportunity to appropriately brief the issue at the trial court level." Pickering Brief at 34. He contends that the trial court "ruled on a plainly incomplete record," because of evidence that Mr. Pickering allegedly "discovered" on August 30, 2024, *i.e.*, over two weeks after the trial court sustained the preliminary objections. *Id.* at 37.

Mr. Pickering does not indicate what error or abuse of discretion the trial court supposedly committed or what order we are reviewing regarding the procedure below. This omission in the argument arises from the fact that Mr. Pickering never moved for an extension of time to conduct additional

discovery. Indeed, as the Condominium correctly observes, Mr. Pickering "conducted a significant amount of venue discovery over the course of a year and never asked the trial court for additional time to complete what he thought necessary." Condominium's Brief at 32. "The trial court was under no obligation to read [Mr. Pickering's] mind and issue another order regarding venue discovery and briefing" after Mr. Pickering had filed his replies and briefs in opposition to the defendants' preliminary objections. *Id.*

Mr. Pickering's failure to make a motion for additional discovery or an evidentiary hearing implicates whether he has properly preserved this issue for our appellate review. "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

Under Pennsylvania Rule of Appellate Procedure 302(a), "issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." *Id.* Hence, "issue preservation is foundational to proper appellate review." *Id.* "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." *Id.*

Here, Mr. Pickering did not ask the trial court for additional time to conduct more venue discovery when the defendants filed their preliminary objections to the Third Amended Complaint. Nor did he request an evidentiary

hearing. Rather, Mr. Pickering filed his reply in opposition to the preliminary objections, several briefs, and various exhibits upon which he relied to try to convince the trial court that venue was proper in Philadelphia County. Based on these actions, the trial court reasonably presumed that Mr. Pickering was done taking venue discovery.

In this scenario, Mr. Pickering neglected to raise the issue of whether additional discovery or an evidentiary hearing was required in the trial court before it decided the preliminary objections. Thus, there was no ruling by the trial court as to whether additional discovery or an evidentiary hearing was needed. Accordingly, there is no ruling for us to review.

We dismiss the final claim of error as waived.

Orders affirmed. Case remanded for transfer to Centre County.

Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/18/2025